STATE OF NEBRASKA, APPELLEE, V. ROBERT MCCLANAHAN, APPELLANT.

231 N. W. 2d 351

Filed July 3, 1975.  No. 39915.

Holtorf, Hansen, Kovarik & Nuttleman, for appellant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellee.

Heard before SPENCER, BOSLAUGH, MCCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

MCCOWN, J.

The defendant was found guilty by a jury of the crime of larceny as bailee. The chattel involved was a registered quarter horse. The District Court placed the defendant on probation for a period of 2 years under specified conditions which included making restitution in the amount of $600 to the owner of the horse.

The defendant, Robert McClanahan, was in the business of buying horses for slaughter. On January 10, 1974, he bought approximately 20 horses at a public sale in Wheatland, Wyoming. The sale was conducted by Joe Madden, a livestock man and auctioneer. At the conclusion of the sale Madden bought one horse from the defendant and the defendant also claimed to be one horse short after the truck was loaded. Because of the blizzard conditions, sub-zero temperatures and blowing snow, Madden told the defendant to go ahead and take the horses he had and they would get it straightened out later. Two days later Madden's son loaded three horses on a truck and delivered them to the defendant near Scottsbluff, Nebraska. A registered quarter horse was included and delivered to the defendant by mistake. Madden discovered the mistake after his son had left to deliver the horses and immediately called the defendant, advised him of the mistake, and asked him to send the quarter horse back. The defendant agreed. The defendant never denied that there was a mistake nor that he had agreed that the horse was to be returned. From this point on the evidence is in sharp conflict. Madden testified that he made several trips to Scottsbluff to get the horse and that the defendant promised to return it on several occasions, but that he was never able to locate the horse. On one occasion he was informed that the defendant had taken the horse to North Platte to a certain horse buyer. Madden called the buyer, told him not to buy the horse, and requested the horse buyer to have defendant call him back. The defendant again promised to return the horse. Madden testified, and the defendant confirmed, that the defendant at no time told Madden that the horse had died. At trial, however, the defendant testified that the horse had died 2 or 3 days after it had been delivered to him and introduced evidence that a dead sorrel horse had been taken from his place to a rendering plant. The evidence, however, indicated that

the dead horse was crippled and unbranded, while the quarter horse had a VR brand on the left hip and was not crippled.

The conflicting evidence was submitted to the jury under appropriate instructions defining the crime and setting out all the necessary elements which the State was required to prove. There was and is no objection to any of the instructions given, and the jury found the defendant guilty as charged. Probation and restitution were ordered and this appeal followed.

The basic contention of the defendant on appeal is that the evidence is insufficient to sustain the verdict. The relevant portion of section 28-540, R. R. S. 1943, under which the defendant was charged and convicted, provides: "If any bailee of any money, bank bill or note, goods or chattels * * * shall convert the same to his or her own use, with an intent to steal the same, * * * he shall be deemed guilty of larceny in the same manner as if the original taking had been felonious, * * *."

We have held that the statute requires there be a bailment of the property; that while so held the bailee must convert the property to his own use; and that such converting to his own use must be with the intent to steal the property. Yost v. State, 149 Neb. 584, 31 N. W. 2d 538. The Yost case also placed the burden on the State to establish every element of the crime beyond a reasonable doubt and said: "In order to prove a charge of larceny as bailee the burden is on the State to establish that the accused came into possession of the property which is the subject of the charge lawfully and that he thereafter unlawfully and with intent to steal converted it to his own use."

Here the jury was instructed as to the meaning of the term "bailment" and the necessary elements, each of which was required to be proved by the State beyond a reasonable doubt. The instructions to the jury came almost verbatim from Yost v. State, supra, and from

section 28-540, R. R. S. 1943. There was and is no objection to the instructions. Although the evidence was in some measure circumstantial and in other respects conflicting, it was nevertheless sufficient to sustain the jury verdict. In a criminal action this court will not interfere with a verdict of guilty based upon conflicting evidence unless, as a matter of law, the evidence is so lacking in probative force that it is insufficient to support a finding of guilt beyond a reasonable doubt. State v. Corfield, 189 Neb. 163, 201 N. W. 2d 818.

The defendant also contends that the trial court abused its discretion in ordering restitution in the sum of $600 to Joe Madden as a condition of defendant's probation. The argument is that there was no admissible evidence in the record to establish the value of the quarter horse at any amount in excess of $500. Section 29-2262, R. S. Supp., 1974, specifically provides that a court, as a condition of probation, may require the offender to "make restitution of the fruits of his crime or to make such reparation as the court determines to be appropriate for the loss or damage caused thereby; * * *."

Restitution and reparation are not limited to the market value of the stolen property nor is the State required to establish the exact amount of the "loss or damage" caused by the crime. The amount of financial restitution or reparation is within the sound discretion of the court. In this case the evidence established that Madden made several trips to Scottsbluff, Nebraska, from Wyoming, and the evidence was undisputed that the animal itself was worth at least $500 and may have been worth $600 to $800. There was certainly no abuse of discretion by the trial court in fixing the amount of restitution.

Although the defendant makes no complaint about erroneous rulings on his objections to the admission of evidence, he has assigned as error the court's failure to strike testimony from the record and to admonish the

jury to disregard it after an objection of counsel was sustained. The defendant did not request that such testimony be stricken nor that the jury be admonished to disregard it, and the court did all that it was asked to do by the defendant as to such evidence. The trial court can hardly be faulted for failing to make an evidentiary ruling it was not asked to make. See Bell v. Commonwealth, 473 S. W. 2d 820 (Ky. App.). The defendant complains also that the trial court failed to rule on some of defendant's objections. We think the proper rule is that if an objection to the introduction of evidence is made, the party making the objection must insist that the trial court rule on the objection or else it is waived. See Bell v. Commonwealth, *supra*. The defendant did not request any instruction that the jury disregard evidence as to which objections had been sustained, nor did he object to the instructions given. The defendant's assignments of error directed at these evidentiary issues are without merit.

The judgment of the District Court is affirmed.

AFFIRMED.